IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| CLIFFORD L. RUSH, | ) | |
| | ) | |
| Petitioner, | ) | 4:14CV3042 |
| | ) | |
| v. | ) | |
| | ) | |
| LEWIEN, WARDEN, | ) | MEMORANDUM OPINION |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

This matter is before the Court on petitioner Clifford Rush's ("Petitioner" or "Rush") Petition for Writ of Habeas Corpus (Filing No. 1).  For the reasons set forth below, the Court finds that a grant of a writ of habeas corpus is not warranted on any of the issues set forth in Rush's habeas corpus petition.

Liberally construed, Rush argues he is entitled to a writ of habeas corpus based on the following claims:

> Claim One:  Petitioner was convicted in violation of his rights under the Fourth and Fourteenth Amendments because law enforcement officers did not have reasonable suspicion to stop his vehicle.
>
> Claim Two:  Petitioner was convicted in violation of his Fifth Amendment privilege against self-incrimination because the trial court admitted evidence of statements petitioner made "during

initial contact with police [that]
should have been suppressed."

Claim Three:  The trial court
failed to make sufficient findings
of fact when denying petitioner's
motion to suppress in violation of
petitioner's rights under the
Fourteenth Amendment.

Claim Four:  The trial court
admitted evidence that petitioner
failed to submit to a breath test
in violation of petitioner's rights
under the Fourteenth Amendment.

Claim Five:  The evidence was
insufficient to sustain the verdict
of guilt beyond a reasonable doubt
in violation of petitioner's rights
under the Fourteenth Amendment.

Claim Six:  The trial court imposed
an excessive sentence in violation
of petitioner's rights under the
Fourteenth Amendment.

(Filing No. 9 at CM/ECF pp. 1-2 (citation to habeas corpus
petition omitted).)

## I.  BACKGROUND

## A.   Conviction and Sentence

The Court states the facts as they were recited by the

Nebraska Court of Appeals in *State v. Rush*, No. A-13-045, 2013 WL

5434674, at *1-4 (Neb. Ct. App. Oct. 1, 2013) (affirming Rush's

conviction and sentence on direct appeal).  *See* *Bucklew v.*

*Luebbers*, 436 F.3d 1010, 1013 (8th Cir.), cert. denied, 549 U.S. 1079 (2006).

On April 26, 2012, the State of Nebraska ("State") charged Rush by information in the District Court of Lancaster County, Nebraska ("state district court"), with driving under the influence (third offense) with refusal to submit to a chemical test and also driving during revocation.  *Rush*, 2013 WL 543676, *1.  Thereafter, Rush moved to suppress evidence and requested a hearing pursuant to *Jackson v. Denno*, 378 U.S. 368 (1964).[1]  The evidence presented at the hearing showed that police officers John Kossow and Justin Roach were on patrol in their cruiser on March 10, 2012, when they ran a routine license plate check of a van driving in front of them.  Upon running the plate check, they learned the registered owner of the van, Timothy Rush, had a 15-year license suspension.  The information on their mobile data terminal included a Department of Motor Vehicles photograph of Timothy and a booking photograph from prior police contacts.  Kossow testified the officers pulled up next to the van on the

---

[1] In *Jackson v. Denno*, the Supreme Court held that a defendant objecting to the admission of a confession is entitled to a fair hearing and reliable determination on whether a confession was voluntary or involuntary.  378 U.S. at 376-77.

driver's side.[2]  Kossow, who had prior contact with Timothy,
compared the photographs displayed on the terminal with the face
of the person driving the van and concluded they appeared to be
of the same person.  Kossow believed the lighting outside was
sufficient to allow him to identify who he believed to be
Timothy.  *Rush, 2013 WL 5434674 at *1*.

     The officers began to follow the van and Kossow
activated the cruiser's overhead lights.  The van continued
without stopping so Kossow started "hitting the siren."  The
officers continued to follow the van until it pulled into a gas
station.  The van did not appear to pull over in response to the
lights and siren; rather, it appeared to have pulled up to the
gas pumps.  The driver exited the van and did not acknowledge the
officers' presence until Kossow spoke to him directly.  Kossow
asked the driver why he did not stop.  As Kossow approached the
driver, he detected a very strong odor of alcohol.  Kossow
realized simultaneously that the driver was not Timothy and that
the driver was intoxicated.  Kossow formed his belief that the
driver was intoxicated based on his observations of slurred

---

[2] At trial, Kossow testified that he had been incorrect when
he testified at the suppression hearing that the cruiser pulled
up to the driver's side of the van.  He testified at trial the
officers had actually pulled up to the passenger side of the van.
*Rush, 2013 WL 5434674*, at *3.

-4-

speech, watery and bloodshot eyes, and extreme confusion.  Upon observing the driver more closely, Kossow realized the driver was Rush, Timothy's brother, whom Kossow also knew from previous encounters.  Kossow had dealt with both of them in the past, and he testified they look enough alike that they could be mistaken for one another.  Kossow thought Rush also did not have a driver's license.  *Id.*

Kossow then asked Rush for his driver's license.  Rush appeared confused and extremely intoxicated.  Eventually, Rush provided his name.  The officers checked his driver's license status, which confirmed his license was suspended.  Rush performed field sobriety tests and showed impairment on all of them.  In addition, Rush failed the preliminary breath test, which was administered by Roach.  During Kossow's contact with Rush, he observed Rush was unsteady, had trouble walking, and swayed as he stood.  Kossow commented to Rush that it was obvious he had been drinking, and Rush said he had had "one."  Kossow told Rush that he knew he should not be driving because he did not have a license and because he had been drinking, and Rush yelled back that he knew he did not have a license.  After the preliminary breath test, the officers placed Rush under arrest.  Kossow testified that he formed the opinion Rush was under the influence of alcohol based on Rush's performance on the field

-5-

sobriety tests, his general appearance, and the preliminary
breath test, although Kossow formed this opinion even before Rush
took the preliminary breath test.  *Id.* at *2.

Roach also testified.  His testimony was substantially
similar to Kossow's testimony except that Roach stated the
officers initially pulled alongside the passenger side of the
van, not the driver's side.  Roach testified the individual he
saw driving appeared to be Timothy, as the facial features of the
driver very closely matched those in the photographs of Timothy.
Roach also testified the van continued moving after the officers
activated the cruiser's overhead lights.  Roach stated Kossow
"tripped" the siren a few times, too, but the van kept going
until it stopped at the gas pump, at which point the officers
initiated contact.  While Kossow approached the driver of the
van, Roach contacted the passengers.  Roach did not have contact
with the driver until Rush was placed in the back seat of the
cruiser, at which time he performed the preliminary breath test
on Rush.  *Id.*

Once Rush was arrested, the officers transported him to
jail, took Rush to the testing room, read him the post-arrest
chemical test advisement, and began the formal testing process.
Roach read the advisement to Rush, slid the advisement form over
to Rush, asked him if he understood it, and told him he had the

-6-

right to read it himself.  Roach also asked Rush if he had any
questions and told him to sign by the "X" if he understood what
was read to him.  Rush became belligerent and out of control,
refused to sign the form, and slid the form back to Roach.  Roach
then checked Rush's mouth for foreign objects, began the 15-
minute observation period, and gave Rush the opportunity to take
the breath test, which Rush refused.  At some point, Rush told
Roach that he has asthma and that he would not take the test
since he had already taken the preliminary breath test.  Kossow
and Roach repeatedly explained to Rush the reason for the two
tests and told him this was the formal test.  In response, Rush
called the officers names and said he would not take the test.
According to Roach, Rush's statements were not made in response
to questions from the officers.  Roach testified neither officer
attempted to elicit information from Rush at the jail other than
in response to demographic questions.  *Id.*

Following the State's presentation of evidence, Rush's
attorney asked the Court to suppress Rush's statements that he
"only had one" and that he knew he should not be driving, arguing
Rush was not free to leave the officer's presence when those
statements were made.  Rush also wanted his answers to the
demographic questions at jail suppressed because he had been
arrested but not given his *Miranda* warnings when those questions

-7-

were asked.  Rush also asked the Court to suppress the evidence from the stop because of the discrepancy between Kossow's and Roach's testimony about which side of the van they pulled up to in order to observe the driver.  Finally, Rush argued his refusal to submit to the breath test should be suppressed because a refusal is now "part and parcel of an aggravated offense" and he was not advised of that, but was simply told that refusal to submit to the test is a separate crime for which he could be charged.  *Id.*

On September 20, 2012, the state district court entered a written order denying all of Rush's motions to suppress.  The Court found the officers reasonably believed Timothy was driving the van on a suspended license and therefore lawfully stopped the van.  The Court found, even though they were mistaken as to the identity of the driver, it was a reasonable mistake of fact based on the officers' observations of the driver and of Timothy's photographs and the fact that the van was registered to Timothy.  The Court found that upon contacting the driver, it was immediately apparent to Kossow that Rush was extremely intoxicated.  The Court concluded there was "probable cause" to stop the van and probable cause to arrest Rush, and accordingly, it overruled the motion to suppress evidence.  *Id.* at *3.

The state district court further found Rush was not in custody when he made statements upon initial contact with police and, therefore, those statements were admissible.  The Court also overruled Rush's motion to suppress most of his statements made after he had been arrested.  The Court found that no *Miranda* warnings were given after Rush was placed under arrest, and it concluded that, except as set forth further in the order, any statements Rush made in response to questions by the officers should be suppressed.  The Court found that Rush's statements made that he was refusing to submit to a chemical test were admissible and denied the motion to suppress as to statements made regarding Rush's refusal to submit.  The Court also found that any statements volunteered by Rush were admissible and overruled the motion as to any volunteered statements, which included belligerent statements made by Rush calling the officers names and a statement he made indicating that he "wanted to go to his cell and pass out."  The Court found that a review of all of Rush's statements revealed that he had knowledge and understanding of what was said and that his answers were responsive to the officers' questions.  The Court found that Rush's statements were made without mental confusion, were made with mental appreciation of what was being said, and were not the product of any promises, threats, or coercion.  Finally, with

-9-

respect to the *Jackson v. Denno* issues, the Court found that all the statements Rush made on March 10, 2012, were freely, voluntarily, knowingly, and intelligently made.  *Id.*

Rush's jury trial was held on November 13 and 14, 2012. Both Kossow and Roach testified in a manner that was generally consistent with the testimony they provided at the suppression hearing.  *Id.* at *3.  Rush did not offer any evidence at trial. *Id.* at *4.

The jury returned a verdict of guilty on both charges. The state district court held an enhancement and sentencing hearing on December 17, 2012, after which it sentenced Rush to 4 to 5 years imprisonment for driving under the influence, revoked his license again for 15 years, and sentenced him to a concurrent term of 3 to 3 months imprisonment for driving on a revoked license, with a 1-year license revocation.  *Id.*

**B.   Direct Appeal**

Rush appealed his conviction and sentence to the Nebraska Court of Appeals.  Rush argued the state district court erred in (1) admitting evidence seized from him as a result of the investigatory stop; (2) admitting statements made by him obtained in violation of *Miranda*; (3) failing to make sufficient findings of fact in its order denying his motions to suppress; and (4) admitting evidence that he failed to submit to a breath

-10-

test.  He also argued the evidence adduced at trial was insufficient to sustain his conviction, and that his sentence was excessive.  (Filing No. 11-1 at CM/ECF pp. 150-151.)

The Nebraska Court of Appeals affirmed Rush's conviction and sentence in a written opinion on October 1, 2013. *See Rush*, 2013 WL 5434674, at 1-9.  Thereafter, the Nebraska Supreme Court denied Rush's petition for further review without issuing an opinion.  (Filing No. 11-2 at CM/ECF p. 2.)

**C.   Habeas Corpus Petition**

Rush filed his habeas corpus petition in this Court on February 24, 2014 (Filing No. 1).  In response to the petition, respondent filed an answer, a brief in support of the answer, and the relevant state court records (Filing Nos. 11, 13, and 14). Rush filed two briefs in support of his habeas corpus petition. (Filing Nos. 12 and 18).

II.   STANDARD OF REVIEW

**A.   Exhaustion Requirement**

As set forth in 28 U.S.C. § 2254:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that−
>
> (A)  the applicant has exhausted the remedies available in the courts of the State; or

-11-

> (B)(I)  there is an absence of
> available State corrective process;
> or
>
> (ii)  circumstances exist that
> render such process ineffective to
> protect the rights of the
> applicant.

28 U.S.C. § 2254(b)(1).

      The United States Supreme Court has explained the

habeas exhaustion requirement as follows:

> Because the exhaustion doctrine is
> designed to give the state courts a
> full and fair opportunity to
> resolve federal constitutional
> claims before those claims are
> presented to the federal
> courts . . . state prisoners must
> give the state courts one full
> opportunity to resolve any
> constitutional issues by invoking
> one complete round of the State's
> established appellate review
> process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  A state

prisoner must therefore present the substance of each federal

constitutional claim to the state courts *before* seeking federal

habeas corpus relief.  In Nebraska, "one complete round"

ordinarily means that each § 2254 claim must have been presented

in an appeal to the Nebraska Court of Appeals, and then in a

petition for further review to the Nebraska Supreme Court if the

Court of Appeals rules against the petitioner. *See Akins v. Kenney*, 410 F.3d 451, 454-55 (8th Cir. 2005).

Moreover, where "no state court remedy is available for the unexhausted claim -- that is, if resort to the state courts would be futile -- then the exhaustion requirement in § 2254(b) is satisfied, but the failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice for the default.'" *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)).

**B.    Standard Under 28 U.S.C. § 2254(d)**

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). A state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the

-13-

Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000).  Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  In addition, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).  The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could

-14-

disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers, 371 F.3d 458, 460 (8th Cir. 2004)* ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. Accordingly, the postconviction trial court's discussion of counsel's performance -- combined with its express determination that the ineffective-assistance claim as a whole lacked merit -- plainly suffices as an adjudication on the merits under AEDPA.

*Worthington v. Roper, 631 F.3d 487, 496-97 (8th Cir. 2011)* (internal quotation marks and citations omitted). The Court also determined that a federal court reviewing a habeas claim under AEDPA must "look through" the state court opinions and

-15-

"apply AEDPA review to the 'last reasoned decision' of the state courts." *Id.* at 497. A district court should do "so regardless of whether the affirmance was reasoned as to some issues or was a summary denial of all claims." *Id.*

## III. DISCUSSION

### A. Claim One

Rush argues in Claim One that he was convicted in violation of his rights under the Fourth Amendment because officers did not have reasonable suspicion to stop the van he was driving. The state district court found that officers lawfully stopped the van. The Nebraska Court of Appeals agreed with the state district court's conclusion, and the Nebraska Supreme Court denied a petition for further review of the issue.

The Supreme Court's holding in *Stone v. Powell*, 428 U.S. 465 (1976), bars this court from reviewing Claim One. In *Stone*, the Court held that "'where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.'" *Chavez v. Weber*, 497 F.3d 796, 801-802 (8th Cir. 2007) (quoting *Stone*, 428 U.S. at 482).

-16-

Rush does not argue he was denied the opportunity to fully and fairly litigate his claim in state court, nor could he.  In order for Rush to do so, he would have to show the State "'provided no corrective procedures at all to address the alleged Fourth Amendment violation' or that the State 'provided a corrective mechanism, but [he] was precluded from using that mechanism because of an unconscionable breakdown in the underlying process.'" *Chavez*, 497 F.3d at 802 (quoting *Willett v. Lockhart, 37 F.3d 1265, 1271–72 (8th Cir. 1994)*).  Here, the State provided corrective measures to address the alleged Fourth Amendment violation.  The state district court held an evidentiary hearing on Rush's motion to suppress.  The state district court concluded no Fourth Amendment violation occurred.  The Nebraska Court of Appeals upheld that determination, and the Nebraska Supreme Court denied a petition for further review of the issue.  Accordingly, this Court may not review the state courts' conclusions on Rush's Fourth Amendment claim.

**B.   Claim Two**

Rush argues in Claim Two that his Fifth Amendment privilege against self-incrimination was violated by the introduction into evidence of statements he made to police officers.  Rush complains about statements he made at the scene of the traffic stop, and also about statements he made in

-17-

conjunction with his refusal to submit to a breath test.
(Filing No. 12 at CM/ECF pp. 9-10.)

        With respect to the statements made at the scene of
the traffic stop, the Nebraska Court of Appeals considered and
rejected Rush's argument that the state district court erred in
admitting the statements into evidence.  Thereafter, the
Nebraska Supreme Court denied a petition for further review of
the issue.  The Nebraska Court of Appeals held, in relevant
part:

> Rush argues that the statements he
> made during his initial contact
> with the police should have been
> suppressed as custodial
> interrogation without the benefit
> of the *Miranda* warnings.
> Specifically, Rush argues his
> statements that he had only "one"
> and that he knew he did not have a
> license were the product of
> unlawful custodial interrogation.
> Rush points to the testimony of
> the officers that he was not free
> to leave at the time he made these
> statements.

        The *Miranda* procedures were not meant to preclude law
enforcement personnel from performing their traditional
investigatory functions such as general on-the-scene
questioning.  *State v. Holman*, 221 Neb. 730, 380 N.W.2d 304
(1986); *State v. Bennett*, 204 Neb. 28, 281 N.W.2d 216 (1979).
In on-the-scene investigations, the police may interview any

-18-

person not in custody and not subject to coercion for the
purpose of determining whether a crime has been committed and
who committed it.  *Id*.  Further, roadside questioning of a
driver detained pursuant to a routine traffic stop does not
constitute custodial interrogation for purposes of *Miranda*.
Instead, there must be some further action or treatment by the
police to render a driver in custody and entitled to *Miranda*
warnings.  *State v. Holman*, *supra*; *State v. Brauer*, 16 Neb.App.
257, 743 N.W.2d 655 (2007). . . .

          The statements Rush complains of all occurred at the
time of the investigatory stop and fall within the context of
on-the-scene roadside questioning as part of the investigatory
stop.  Because those statements were made in the process of an
investigation to determine whether criminal activity was afoot,
the statements were not custodial and *Miranda* warnings were not
required.  Rush's argument is without merit.  *Rush, 2013 WL
5434674*, at *6-7.

          Here, Rush does not challenge the state courts'
findings of fact.  Rather, he takes issue with the state courts'
legal determination that Rush was not in custody -- and,
therefore, not entitled to *Miranda* warnings -- at the scene of
the traffic stop.  As he did in state court, he argues he was in
*Miranda* custody because, once the officers pulled him over, he

-19-

was not free to leave the scene of the traffic stop.  Despite
Rush's assertions to the contrary, the state courts' conclusions
of law are consistent with clearly established federal law.  The
Supreme Court has held that roadside questioning of a motorist
who is pulled over in a routine traffic stop does not constitute
custodial interrogation.  *Berkemer v. McCarty*, 468 U.S. 420,
423, 441-442 (1984).  This is so even though "a traffic stop
significantly curtails the 'freedom of action' of the driver"
and it is generally "a crime either to ignore a policeman's
signal to stop one's car or, once having stopped, to drive away
without permission."  *Id.* at 436.

        Rush also argues statements he made in conjunction
with his refusal to submit to a breath test should have been
suppressed.  Rush did not raise this issue in Nebraska's state
courts.  Moreover, Officer Roach testified at the hearing on
Rush's motion to suppress that Rush's statements that he would
not take the breath test were volunteered.  (*See* Filing No. 11-3
at CM/ECF p. 89.)  Volunteered statements are not barred by the
Fifth Amendment.  *See United States v. Noonan*, 745 F.3d 934,
937, n.2 (8th Cir. 2014) ("Because Miranda warnings are required
before custodial interrogation, 'statements volunteered by a
suspect during the course of routine arrest procedures [and]
custodial statements made on the suspect's own initiative are

-20-

not subject to the safeguards of Miranda.'") (quoting *Butzin v. Wood*, 886 F.2d 1016, 1018 (8th Cir. 1989), *cert. denied*, 496 U.S. 909 (1990)).  Rush is not entitled to relief on this claim.

## C.   Claims Three, Four, and Six

In conducting a preliminary review of Rush's petition, this Court liberally construed Claims Three, Four, and Six to be federal due process claims.[3]  (*See* Filing No. 9.)  However, it is now apparent from the record that Rush never raised the arguments as federal due process claims in Nebraska's state courts.  (*See* Filing No. 11-1 at CM/ECF pp. 168-173, 176-178 (Rush's brief in on direct appeal); *see also id.* at CM/ECF pp. 125-128 (Rush's petition for further review).)  The claims are, therefore, procedurally defaulted.  (*See* Respondent's brief in support of answer at Filing No. 14 at CM/ECF pp. 17, 19-20, 23-24 (arguing Claims Three, Four, and Six are procedurally defaulted).)

---

[3] Rush argued in Claim Three that the state district court failed to make sufficient findings of fact in its order denying Rush's motion to suppress.  Rush argued in Claim Four that the state district court erred in admitting evidence that he failed to submit to a breath test because law enforcement officers advised him only "that he could be charged with a separate crime," not that "he could be charged with the *enhancement* of a crime."  (Filing No. 1 at CM/ECF p. 10 (emphasis added).)  Finally, Rush argued in Claim Six that the state district court imposed an excessive sentence.

The Court cannot consider the merits of any procedurally defaulted claims unless Rush shows cause and prejudice to excuse the procedural default of the claim or he shows that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) ("In all cases in which a state prisoner has defaulted his federal claims . . . federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."); *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999) ("[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.").

In response to respondent's arguments that Claims Three, Four, and Six are procedurally defaulted, Rush argues the claims were not properly raised in state court because he had ineffective assistance of counsel. (*See* Filing No. 18 at CM/ECF pp. 5-7.) Rush offers no facts in support of his argument and the Court will not speculate as to his reasoning. Regardless, Rush cannot make the threshold showing of prejudice. The

Nebraska Court of Appeals considered and rejected the crux of each of the arguments raised in Claims Three, Four, and Six. First, it determined the state district court's order denying Rush's motion to suppress was sufficiently specific to allow appellate review of the state district court's decision. *See Rush*, 2013 WL 5434674, at *7. Second, it found no merit to Rush's argument that the advisement provided by the officers was incorrect or insufficient. *Id.* Finally, it determined Rush did not receive an excessive sentence, as his sentences were all within the statutory range. *Id.* at *9. This Court agrees with each of these findings. Moreover, each of these findings is entitled to deference under the statutory standard of review that applies to factual and legal conclusions made by the state courts. Rush has not shown that the Nebraska Court of Appeals's decisions on these issues were contrary to, or involved an unreasonable application of, clearly established Federal law. Rush is not entitled to relief on these claims.

**D.   Claim Five**

Rush argues in Claim Five that the evidence was insufficient to sustain the jury's finding of guilt beyond a reasonable doubt. The Nebraska Court of Appeals considered and rejected this argument, and the Nebraska Supreme Court denied a

-23-

petition for further review of the issue.  The Nebraska Court of
Appeals held, in relevant part:

> In arguing this assignment of
> error, Rush points to the fact
> that there were no observed
> traffic violations prior to the
> stop and that the van was stopped
> because the officers thought
> Timothy was driving it on a
> suspended license.  Rush suggests
> that multiple reasons could exist
> for his failure to immediately
> stop the van, his slurred speech,
> his watery and bloodshot eyes, the
> odor of alcohol, and his
> performance on the field sobriety
> tests.

The relevant question for this Court is whether, after
viewing the evidence in the light most favorable to the
prosecution, any rational trier of fact could have found the
essential elements of the crime beyond a reasonable doubt.  Rush
was able to, and did, present evidence regarding these
alternative explanations to the jury, which apparently rejected
them.  There was sufficient evidence presented to support a
finding beyond a reasonable doubt that Rush was operating a
motor vehicle while under the influence of alcoholic liquor and
that he refused to submit to a chemical test.  This assignment
of error is without merit.  *Rush*, 2013 WL 5434674, at *8
(internal citation omitted).

-24-

Rush has not argued, let alone shown, that the state court's decision was contrary to, or involved an unreasonable application of, clearly established Federal law.  Nor could he.  Within the context of § 2254, the Court considers "'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Liggins v. Burger*, 422 F.3d 642, 647 (8th Cir. 2005) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  This same standard was employed by the Nebraska Court of Appeals in reviewing Rush's claim concerning the sufficiency of the evidence.  Moreover, Rush made no attempt to rebut any of the state courts' factual findings by clear and convincing evidence.  For these reasons, Rush is not entitled to relief on this claim.

## IV.   CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district

-25-

court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Rush has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised in Rush's petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, a certificate of appealability will be not issued in this case. A separate order will be issued in accordance with this memorandum opinion.

DATED this 27th day of January, 2015.

BY THE COURT:

/s/ Lyle E. Strom

_____
LYLE E. STROM, Senior Judge
United States District Court

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the Court has no agreements with any of these third parties or their Web sites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.